IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD LAWTON McLEOD,
    Petitioner

v.                          CIVIL ACTION NO. AMD-05-1589

JAMES V. PEGUESE, Warden,
    Respondent

...o0o...

MEMORANDUM OPINION

In this action, the Fourth Circuit has authorized a second 28 U.S.C. § 2254 petition for habeas relief, *see* 28 U.S.C. § 2244(b)(3)(A), which is now before the court for consideration. Petitioner Richard Lawton McLeod, through his counsel, challenges his 1992 felony murder conviction in the Circuit Court for Prince George's County.[1] Petitioner asserts that evidence discovered only after his first petition was dismissed as untimely establishes that the state violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose to the defense in a criminal case exculpatory evidence.[2] Respondent James V. Peguese has filed an answer in opposition to which petitioner has filed a reply. On March 22, 2007, the court held a non-evidentiary hearing on the petition. For the reasons that

---

[1] Petitioner has been ably represented by *pro bono* counsel in this proceeding. The court deeply appreciates counsels' efforts.

[2] Under *Brady*, the prosecution's failure to disclose evidence to an accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The prosecutor's duty encompasses exculpatory evidence that is "known only to police investigators and not to the prosecutor." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). To establish a constitutional violation predicated on a *Brady* violation, it must be shown that: (1) the evidence was favorable to the accused; (2) it was suppressed by the State; and (3) the suppression prejudiced the defense at trial. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

follow, the court concludes that federal habeas corpus relief is not warranted and the petition shall be dismissed. *See* 28 U.S.C. §2244(b)(4).

I. The *Brady* Claim

McLeod asserts that the state suppressed the identity of potential witness Karen Clark ("Clark") and the potentially exculpatory information she possessed.[3] This information linked her former husband, Richard Nelson ("Nelson") to the murder, and potentially exculpated McLeod. Petitioner asserts that this information could not have been discovered earlier because he first learned of Clark's existence when she wrote to him in prison in August 2002.

II. Background

   A. Factual and Procedural History

On October 27, 1992, a jury sitting in the Circuit Court for Prince George's County found McLeod guilty of first degree felony murder in the August 10, 1987, murder of Jacqueline Roberson. The court sentenced McLeod to life imprisonment without the possibility of parole on the murder conviction.[4]

Roberson was last seen alive on August 10, 1987, waxing her husband's car in a wooded area of Bowie, Maryland. Her body was found on August 13, 1987. Roberson died

---

[3] McLeod also alleged that police investigators violated *Brady* by failing to disclose the witness statement of Pamela Fike, who stated that her brother had told her that the "Saunders [brothers]" could have murdered Roberson.

[4] McLeod was also convicted of carrying a dangerous weapon openly with intent to injure and sentenced to a consecutive three-year sentence. This sentence was later merged with the felony murder sentence.

from multiple stab wounds. She was found nude, and her clothing, including a navy blue shirt and blue jean shorts, was located near her body. Investigators also found a red bandana with the logo of radio station WMZQ at the crime scene; cat hairs were on the bandana. A knife was also found near the crime scene but it was determined that the knife was not the murder weapon.

On August 13, 1987, the same day Roberson's body was discovered, McLeod was arrested for an unrelated rape of a 15-year-old girl. On December 16, 1987, McLeod pleaded guilty to the rape of the 15-year-old and was sentenced to 40 years imprisonment, with 15 years suspended.

In February 1988, McLeod was charged with Roberson's murder and related offenses. These charges were later *nolle prossed*. The murder investigation was re-opened in March 1991, and in March 1992, McLeod was indicted for Roberson's murder.

At trial, the state presented a substantial circumstantial case against McLeod. McLeod owned a bandana and a knife like those found at the scene of the crime, and lived in a home with several cats. The prosecution also showed that after his arrest on the rape charge, McLeod was taken to the Prince George's County Detention Center where he was questioned by his parents. When asked by a member of his family why he had been arrested, McLeod answered that it was either for rape or murder. When he was informed that the victim he was charged with raping was 15, McLeod told his parents that he thought she was much older; Roberson was 28 years of age. McLeod also stated that his victim (ostensibly

of the August 13 rape) was wearing blue shorts and a blue pullover. This description matched Roberson's clothing found at the murder scene, but not the clothing of the rape victim.

Several days after his arrest, McLeod's mother found a pair of shorts in his bedroom that appeared to have wax on them and notified the police. Tests conducted on the shorts showed that the wax on the shorts was consistent with a sample taken from the can of Turtle Wax found in Roberson's car. Additionally, the prosecution presented testimony that McLeod gave conflicting alibis to his step-father.

At trial, the parties stipulated that had the 15-year-old rape victim testified (she broke down in front of the jury and could not complete her testimony), she would have stated that she was raped by McLeod on August 13, 1987, and would have identified her clothing.

The jury found the petitioner not guilty of first degree premeditated murder but guilty of felony murder (based on a theory that the killing occurred in the course of an attempted rape). Petitioner appealed and among the issues raised on appeal was whether the trial judge erred in allowing the state to present "other crimes" evidence to the jury (i.e., the August 13, 1987, rape).[5] On June, 21, 1993, in an unreported opinion, the Court of Special Appeals of Maryland affirmed McLeod's felony murder conviction, but held that the sentence on the deadly weapon count should merge into the felony murder sentence, and remanded the case

---

[5]McLeod also raised the following issues: (1) whether the trial judge erred in submitting a felony murder count to the jury; (2) whether the trial judge erred in denying a motion to suppress evidence; (3) whether the imposition of a sentence of life without possibility of parole was an abuse of discretion; and (4) whether the sentences should merge.

for resentencing. Regarding the "other crimes" evidence, the appellate court stated:

> The stipulation placed in context the statements that appellant had made to his parents concerning the age of his victim and the clothing that she wore. Appellant's statements to his parents did not correspond to the crime for which he had been arrested (rape of 15 year of girl who wore a purple top and white shorts with thin red stripes). Rather, appellant's statements reflected his guilty knowledge of and complicity in the crimes that had been committed against Mrs. Roberson. In this vein, the stipulation was quite probative.

On remand, McLeod was again sentenced to life in prison without the possibility of parole. The Court of Special Appeals affirmed the judgment on further appeal. On December 16, 1994, the Court of Appeals of Maryland denied further review.

McLeod filed a pro se petition for state post conviction relief on April 23, 1997, which, as amended by counsel, alleged ineffective assistance of counsel, trial court error, abuse of discretion, and prosecutorial misconduct. McLeod complained that trial counsel was constitutionally ineffective because he failed to conduct an adequate investigation and to pursue "an alternate theory for the homicide" or present evidence that "would indicate that it was likely that the homicide victim witnessed a drug deal and was killed for this reason, either by Brian Rose or any number of other drug dealers whose path she may have crossed the day that she was killed." Following a hearing on the petition, the state post conviction court denied relief on June 22, 1998. On March 13, 2000, the Court of Special Appeals denied McLeod's application for leave to appeal the post-conviction court's decision.

McLeod filed his first 28 U.S.C. §2254 petition on September 4, 2001, and this court dismissed it as time-barred on November 15, 2001. The Fourth Circuit denied McLeod's

request for a certificate of appealability.

On April 23, 2003, after he was contacted by Clark, and now represented by pro bono counsel, McLeod filed a motion to re-open his state post-conviction proceedings in order to present evidence on the alleged *Brady* violation arising from the state's alleged failure to disclose Clark's identity and the alleged information she provided to one of the investigating detectives, namely, that her former husband, Nelson, may have murdered Roberson or otherwise been involved in the crime. Further, he complained that his investigation of the information Clark had provided was impeded because the state had lost or destroyed much of the evidence introduced at trial.[6]

B. Hearing on the Motion to Re-Open State Post Conviction Proceedings

On January 13-14, 2004, the Circuit Court for Prince George's County conducted a hearing on the motion to reopen state post-conviction proceedings. McLeod testified in support of the motion, as did Clark, David Cordle, an Anne Arundel County police investigator, Virginia Acree, a former girlfriend of Nelson, and Gary Ward, McLeod's trial counsel. The state called the following witnesses: Laura Gwinn, the trial prosecutor, and Detectives Douglas LaFoille and Robert Edgar, the principal investigators of the Roberson murder.

---

[6] There is no evidence that the destruction or loss of evidence and files was deliberate or otherwise improper, although McLeod has sometimes argued that it was a deliberate attempt to thwart his post-conviction efforts. In any event, McLeod insists that the destruction of the evidence must weigh in his favor in the court's consideration of his petition, but this court is not authorized to treat the destruction of the evidence as if it were a deliberate tactic in the absence of any evidence to support such a finding.

1. Testimony of Karen Clark

Clark testified that she first met with Detective LaFoille in October 1991, when he contacted her while he was trying locate Nelson. She testified she provided him with substantial information which supported her suspicion that Nelson may have been involved in, or indeed, may have committed, the Roberson murder, including the following information: (1) Nelson always wore a bandana; (2) Nelson and their minor son had matching red WMZQ bandanas; (3) Nelson had required her to give him his son's bandana because he, Nelson, had lost his own; (4) Nelson had owned a knife like the one found at the crime scene; (5) Nelson was a drug user who was involved with the Pagans Motorcycle Club; (6) Nelson had physically abused her during their marriage; (7) Nelson might have been involved in the murder of two other women. Clark testified that she did not attend McLeod's trial because LaFoille had told her that her presence was not necessary. Additionally, Clark produced telephone message slips dated October 14, 1991, and October 22, 1991, containing LaFoille's contact information. On the bottom of the slip dated October 14, 1991, there was contact information written in LaFoille's own handwriting.

2. Testimony of Detective Douglas LaFoille

Detective LaFoille testified that he could not recall ever interviewing or ever meeting Clark, but acknowledged that Clark had e-mailed him in 2001, and they later had two or three telephone conversations. LaFoille confirmed his handwriting on the October 14, 1991, telephone message slip. He testified that it was his practice to leave his name and pager

number on anything that was available to him whenever he spoke to anyone regarding this case. LaFoille denied ever telling Investigator Cordle that he might have maintained his own notes on the investigation and took them with him after he retired from the police force.

   3.  Testimony of Richard Lawton McLeod

McLeod testified that when he was initially charged with the Roberson murder in February 1988, he was approached by another inmate named "Rick" who said he knew that McLeod had not committed the murder. McLeod did not inform the police of this apparently because, shortly afterwards, on March 3, 1998, the Roberson murder charge against McLeod was *nol prossed* for lack of evidence. When the murder investigation was reopened in 1991, McLeod relayed this information to LaFoille and his supervisor, Detective Edgar. "Rick" was later identified as Nelson.

   4.  Testimony of David Cordle

David Cordle, who investigates "cold cases" for the Anne Arundel County State's Attorney's Office, testified that he was contacted by Clark either in late 1998 or early 1999 regarding statements made to her by Nelson about the 1973 murder of a woman in Anne Arundel County. Cordle met with Clark on December 6, 2000. She told him that Nelson was violent, a drug-user, may have been involved in the Anne Arundel County murder, and that a detective from Prince George's County (LaFoille) had contacted her to find Nelson.[7] Cordle testified that he spoke with LaFoille by telephone on February 9, 2001, and that

---

[7]There is no dispute that Prince George's County police made extensive efforts to locate Nelson during the investigation of the Roberson murder.

during the call, LaFoille recalled meeting Clark when he was searching for Nelson during the Roberson murder investigation. According to Cordle, LaFoille told Cordle that he may have taken a couple of boxes of notes on the Roberson murder with him when he retired.

### C. Decision of the Post-Conviction Court

The court denied McLeod's motion to re-open in an opinion filed on or about June 11, 2004. The court found Clark's testimony less reliable than that presented by LaFoille. The court also concluded that although Pamela Fike's statement should have been disclosed by the prosecutor, the Fike statement was not material to McLeod's guilt or innocence. The court reasoned as follows:

> In connection with the instant Motion to Re-Open, this Court does find that there was some contact between Detective Douglas LaFoille and Karen Clark in the Fall of 1991. LaFoille acknowledged that the contact information on the bottom of the October 14, 1991, phone message produced by Ms. Clark was not only accurate, but was in his handwriting. Therefore, this Court has little difficulty concluding that some contact between the two was initiated [citation omitted].
>
> The crux of the matter lies in determining what the substance of the contact between Detective LaFoille and Karen Clark was and such a determination is dependent solely on the credibility of the witnesses. As the fact finder, this Court bears the responsibility of weighing the credibility of the witnesses and resolving any conflicts in the evidence. *State v. Stanley,* 351 Md. 733, 750. (1998).

Resp. Ex. 37 at 18. The court then addressed the issue of Clark's credibility.

> From her testimony, it is clear to this Court that Ms. Clark is fixated on her former husband, his whereabouts, and his actions over the past twenty-five years. Ms. Clark's continued focus on Mr. Nelson, whom she admittedly has not seen since 1989, seemed to have emerged with a single-minded determination in 1998 when she initially contacted Investigator Cordle, some seven years after her alleged conversations with Detective LaFoille.

-9-

> Since then, as she testified, Ms. Clark has spoken with Mr. Cordle hundreds of times regarding her relationship with her former husband and her suspicions about his involvement in numerous other murders and missing persons cases. Motion Tr. at M-88, 89, 142.
>
> \* \* \*
>
> The Defendant asks the Court to consider, when weighing this witness's credibility, the fact that the information Ms. Clark relayed to Investigator Cordle is substantively the same as the information she claims to have given Detective LaFoille. However, Ms. Clark did not go into any detail with Cordle during their initial contact in 1998, and Cordle, even though it is alleged that she mentioned Nelson in connection with the murder he was investigating, did not recall the conversation with her until he "subsequently discovered that it did take place." Motion Tr. at M-82.

Resp. Ex. 37 at 18-19.

The court characterized the testimony of LaFoille as a "sharp contrast to that presented by Clark." The post-conviction court said:

> While the testimony of Ms. Clark lent a bizarre and violent face to Richard Nelson, it also vividly pointed out her unresolved issues with him, issues that led her determined efforts after 1998 to connect him with every missing person and unresolved murder that occurred in the general area. Detective LaFoille's testimony, however, was unfettered by any personal issues. He testified as to the method he and Detective Edgar employed for the investigation into Jacqueline Roberson's murder, and the fact that he turned over his notes and reported to Edgar on a daily basis. Motion Tr. at M-213. He also steadfastly maintains that he has no recollection of meeting with, or even speaking to, Karen Clark during the course of the investigation.
>
> Detective Robert Edgar, to whom Detective LaFoille reported, testified that he had never heard of Karen Clark before the matter herein was filed. As the lead investigator, he was also actively involved in the search for Richard Nelson, and in the course of his interviews with Mr. Nelson's acquaintances and family members, no one directed him to or even mentioned, Karen Clark. Motion Tr. at M-249,265. Similarly, Assistant State's Attorney Laura Gwinn had not heard of Karen Clark prior to the filing of this Motion. Motion Tr. at M-180.

> This Court has great difficulty accepting the proposition that Detective LaFoille met with Karen Clark on several occasions, during which she provided him with a detailed description of Mr. Nelson's statements regarding the deaths of Donna Dustin and Jeanne Kline, as well as a link between Mr. Nelson and several pieces of physical evidence found at the Roberson crime scene, and that he decided not to share the information with Edgar or anyone else involved in the investigation. No plausible reason has been given for him to have done so.

Resp. Ex. 37 at 20-21.

As to the disparities between the testimony of LaFoille and Cordle, the post-conviction court concluded:

> Investigator Cordle maintains that Detective LaFoille told him that he recalled meeting with Karen Clark, that he may have taken a few boxes and kept some records about him (about the Roberson investigation) when he moved to Michigan, and he would search for those records. Motion Tr. at M-58-60. However, Detective LaFoille flatly refutes this version of the events. He consistently maintains having no recollection of any contact with Ms. Clark prior to 2001. Moreover, although he had indicated to Cordle that he may still have some notes relating to the Roberson murder investigation, he was not referring to notes that he had personally taken to Michigan after he retired, but notes that would be in the Department's file in Maryland. Motion Tr. at M-217. Cordle produced a page of notes that he claims to have taken contemporaneously with his conversation with Detective LaFoille that indicate that Brian Rose "ran" with Mr. Nelson, and that the group the Defendant was associated with had a connection to the group Mr. Nelson associated with. *See* Defendant's Exhibit #20. Detective LaFoille denied making statements to Cordle about any such connection or sharing this kind of information with him. Motion Tr. at M-229, 231.
>
>       \*   \*   \*
>
> When examining the credibility of both Mrs. Clark and Detective LaFoille in the context of all of the surrounding circumstances and evidence presented herein, the Court finds Detective LaFoille to be the more credible witness.
>
> This Court is perplexed by the discrepancies between the testimony of

> Detective LaFoille and that of Investigator Cordle with regard to their contact with each other. More telling to the Court, however, is the fact that Cordle did not testify that Clark told him she had provided LaFoille with the same information she was giving him, but in 1991.

Resp. Ex. 37 at 21-22, 24.

Ultimately, the post-conviction court concluded McLeod had failed to demonstrate that the state had withheld evidence favorable to him in violation of *Brady*. "When examining the totality of the circumstances and evidence presented at the hearing, as it relates to the credibility of Karen Clark and Detective Douglas LaFoille, the Court finds Detective LaFoille to be the more credible witness." After determining that the information allegedly linking Nelson to Roberson's murder was not provided by Clark to LaFoille, as alleged, the state court did not deem it necessary to reach the question of materiality.

III.  Analysis

A claim presented in a successive §2254 habeas corpus application must satisfy a high threshold for consideration. Specifically, a claim that was not presented in a prior application under §2254 must be dismissed unless:

> (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. §2244(b)(2)(B). *See also* 28 U.S.C. §2244(b)(4).

After its careful consideration of the pleadings, exhibits, and arguments presented by

counsel at the hearing, the court is satisfied that McLeod and his counsel were unaware of Clark's existence or the alleged information that she claims to have possessed until she wrote to petitioner in August 2002 and that no reasonable efforts prior to that time could have been pursued to discover Clark, Accordingly, the first prong of the showing required under §2244(b)(2)(B) is satisfied. Thus, as a claim in a successive petition, for this court to conduct a *de novo* review of the *merits* of the *Brady* claim presented here, McLeod must show *clearly and convincingly* that "the facts underlying the claim, if proven and viewed in the light of the evidence as a whole," would support the conclusion that "no reasonable factfinder would have found him guilty of" felony murder.[8]

The standard of review that applies to § 2254 petitions, including, as here, successive petitions, is highly deferential to state court decision-making. "[A] determination of a factual issue made by a State court shall be presumed to be correct," 28 U.S.C. § 2254(e)(1), and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id*. Moreover, federal habeas corpus relief is not available for a claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable

---

[8]Nevertheless, as a practical matter, it is of little consequence that this case presents a successive petition. This is because the record shows that although the hearing conducted by the state court was ostensibly only on the issue of whether to permit McLeod to "reopen" his post-conviction application, in reality it was a full-blown hearing on the underlying claim that the state had committed a *Brady* violation. That is, the state court did not limit its consideration to procedural questions under the post conviction statute or similar issues, but it took evidence from the witnesses on, and fully considered, the truth of the claim that the state had committed a violation of *Brady*. Thus, the presumption of correctness shielding state court fact finding presents the same high barrier whether this case is treated as a first or successive petition.

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2).

Where, as here, a petitioner "challenges the state court's findings based entirely on the state record," a federal court must first determine whether the adjudication resulted in a decision based on an "unreasonable determination of the facts." *See Taylor v. Maddox*, 366 F .3d 992, 999 (9th Cir.2004).[9] A state court's determination of fact is unreasonable if the court failed to make a factual finding when it should have, the state court's factual finding is made under an incorrect legal standard, or when the fact-finding process is defective. *Id*. at 992.

The Supreme Court has elaborated on the statutory requirements. A state court decision may be overturned on factual grounds only if its determinations of fact are "objectively unreasonable in the light of the evidence presented in the state-court

---

[9]In a recently-filed post-hearing memorandum, McLeod has presented authorities explicating the circumstances in which courts have found state court fact finding sufficiently unreasonable to justify a federal court's decision to reject the credibility findings of state courts. This court has reviewed those authorities and is not persuaded that they compel, or substantially support, the rejection of the state court's fact finding in this case. Most of those cases involve mixed questions of fact and law, e.g., the credibility of an explanation for a *Batson*-based challenge to a peremptory strike of a juror, or the credibility of an explanation for attorney acts and omissions in response to a *Strickland*-based challenge to the effectiveness of defense counsel. In any event, every case turns on its own particular facts and circumstances, and here the court is not persuaded that the myriad criticisms by McLeod of the state court's fact finding support the conclusion that the court's findings and credibility choices are beyond the pale of "reasonable."

proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). State court decisions about witness credibility are factual determinations entitled to a presumption of correctness. *Id*. at 324. However, "[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review . . . . A federal court can disagree with a state court's credibility determination and, when guided by [the habeas statute, as amended], conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence." *Id.* at 340. "Deference does not by definition preclude relief." *Id*.

Under the above standards, this court is not persuaded that the state court's findings, and in particular its determinations of credibility of the witnesses, can be called "unreasonable" by a "clear and convincing" standard in light of the entirety of the evidence presented in the state court proceedings. The primary question of fact "underlying the claim" here is whether Clark provided to LaFoille in 1991 the detailed exculpatory information that she asserted (at the hearing on the motion to reopen) she did. As the fact finder, the state court weighed the credibility of the witnesses, and undertook to resolve the many conflicts in the evidence. After considering all the testimonial and documentary evidence presented, the state court concluded that LaFoille's testimony, as supported by that of his supervisor Edgar, was more credible than, and should be weighed more significantly than, that of Clark.

The court determined that Clark had "unresolved personal issues" with Nelson, as evidenced by her efforts to implicate him in "every missing person and unresolved murder that occurred in the general area." The court concluded specifically that Clark *did not*

provide the police with the kind of detailed statements linking Nelson to the Roberson murder as she had claimed at the hearing, although it clearly found that LaFoille had interviewed Clark during his investigation of the Roberson murder in 1991. There simply is no convincing basis on this record for this court to conclude that the presumption of correctness accorded to factual determinations made by the state court should be disturbed. In view of the state court's reasonable, even if arguably debatable, or even strained, credibility determinations relative to Clark and LaFoille, in light of the evidentiary record as a whole, there is no basis here to decline to afford the court's findings the presumption of correctness that federal law mandates.

Finally, the court is constrained to conclude that the state court's determination (unquestionably on the merits) that the prosecution's failure to disclose Pamela Fike's triple-hearsay witness statement suggesting that "the Saunders" might have been involved in the Roberson murder does not remotely rise to the level of a determination that was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." Accordingly, McLeod is not entitled to proceed further on the basis of the state's failure to disclose the Fike statement, as the state court reasonably concluded that the Fike statement was not material and, impliedly, that confidence in the jury's verdict is not undermined by its non-disclosure. *See supra* n. 2 (elements of *Brady* claim).

IV.  Conclusion

For the reasons stated above, the decision of the state post-conviction court (in respect

to the alleged suppression of Clark and her disclosures about Nelson) on the motion to reopen the post conviction, which was *de facto* an actual hearing on the underlying claim of constitutional taint, constituted reasonable fact finding immune to federal re-examination. Furthermore, as to the failure to disclose the Fike witness statement, the state court did not apply unreasonably Supreme Court jurisprudence in reaching its legal conclusion of lack of materiality. Accordingly, the court will dismiss the petition. An order follows.


Filed: March 30, 2007                               /s/
                                            Andre M. Davis
                                            United States District Judge